IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CAROLYN McKAY SYDNOR, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CASE NO. 1:10cv934 (JCC/IDD) |
| : | |
| FAIRFAX COUNTY, VIRGINIA, : | |
| : | |
| Defendant. : | |

**REPLY BRIEF OF DEFENDANT FAIRFAX COUNTY TO
PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
<u>DEFENDANT'S MOTION TO LIMIT DAMAGES</u>**

Defendant Fairfax County, Virginia, by counsel, files this Reply Brief to Plaintiff's Opposition to Defendant's Motion to Limit Damages.

**<u>ARGUMENT</u>**

Plaintiff seeks to defend the Motion to Limit Damages herein on two grounds: first, that the failure of the County properly to meet and confer concerning this motion before filing it mandates the denial of this motion; and, second, that her failure to comply with the mandate of FED. R. CIV. P. 26(a)(1)(A)(iii) that she compute her damages and disclose all documents supporting her computation is harmless. For the reasons set forth below, these positions are without merit, and the Defendant's Motion to Limit Damages should be granted.

**I. LOCAL RULE 37(E) IS INAPPLICABLE; EVEN IF IT WERE TO APPLY, THIS COURT SHOULD EXCUSE OR OVERLOOK ANY TECHNICAL FAILURE TO COMPLY AND DECIDE THIS MOTION ON ITS MERITS.**

Local Rule 37(E), relied upon by the Plaintiff as a basis upon which the Motion to Limit

Damages should be denied, is inapplicable on its face; it addresses "Motions to Compel and Sanctions." Even if it were applicable, the meet and confer requirements set forth therein are not a proper basis upon which to deny this Motion.

In its Opposition to Plaintiff's Motion to Deny Defendant's Requested *In Limine* Relief Without a Hearing, the County laid out the communication between counsel that occurred prior to the filing of this Motion. Counsel for the Defendant did, in fact, make a good faith effort to discuss the matter before the filing of the Motion to Limit Damages via email correspondence. While the actual discussion was limited, that was not surprising given that the Plaintiff would not voluntarily agree to limit her damages. In other words, even if this Court does not believe that the actions of counsel in this case were sufficient, the Plaintiff's instant motion should be denied because any attempt more fully to discuss the Motion to Limit Damages in person or by telephone would to likely have been futile. The Plaintiff has cited no case law in which a district court has denied a motion on its face and without a hearing merely for the failure of the moving party to meet and confer. On the other hand, the County cited a number of cases in which the meet and confer requirements were not met, and in which the underlying motion was heard—and decided favorably to the movant—because technical compliance with the formal requirements of the rule would have been futile. *See Reidy v. Runyon,* 169 F.R.D. 486, 489-91 (E.D.N.Y.1997) (sanctions awarded to moving party despite its failure to meet and confer because compromise was unlikely to be achieved); *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 351, 356 (N.D.Ill.2005) ("[t]he doctrine of futility is as applicable in the context of Rule 37 and Local Rule 37.2 as it is in any other."); *Long v. Anderson University,* 204 F.R.D. 129, 133-34 (S.D. Ind. 2001) (motion decided on merits despite failure to meet and confer because it involved "mportant issues which may affect the outcome of the case." *Long v. Anderson University,* 204

F.R.D. 129, 133-34 (S.D. Ind. 2001); *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.,* 181 F.R.D. 229, 235-36 (W.D.N.Y. 1998); *Matsushita Elec. Corp. v. 212 Copiers Corp.,* 1996 U.S. Dist. LEXIS 2221, *2-3 (S.D.N.Y. Feb. 29, 1996) (motion neither barred nor held in abeyance because meet-and-confer would have been an "act of futility").

As set forth in the County's Opposition to Plaintiff's Motion to Deny Defendant's Requested *In Limine* Relief Without a Hearing, the meet and confer requirements are designed to resolve issues without the need for judicial intervention.  In this case, no such resolution is possible; the parties disagree on whether the Plaintiff is entitled to present certain evidence of her damages, and the Plaintiff is unwilling to agree to so limit her evidence.

The County relies on the facts, citations and argument set forth in its Opposition to Plaintiff's Motion to Deny Defendant's Requested *In Limine* Relief Without a Hearing, as regards its Motion to Limit Damages, and incorporates the same herein by reference.  A copy of that brief, with exhibits, is attached hereto as Exhibit A.

## II. PLAINTIFF'S FAILURE TO COMPUTE HER DAMAGES AND DISCLOSE THE DOCUMENTARY SUPPORT FOR HER COMPUTATION IS NOT HARMLESS.

In Plaintiff's Reply in Support of Motion to Deny Defendants (*sic*) Motions in Limine Without a Hearing, Plaintiff contends that "[t]his Court should not credit counsel's effort to ignore the plain language of the rules."  Plaintiff's Reply in Support of Motion to Deny Defendants Motions in Limine Without a Hearing at 1.  Yet, as regards the clear and plain requirements of FED. R. CIV. P. 26(a)(1)(A)(iii), Plaintiff seeks to excuse her efforts to ignore the language of that rule.  Unlike the rules requiring parties to meet and confer prior to filing discovery motions, which, as set forth above and in the County's Opposition to Plaintiff's Motion to Deny Defendant's Requested *In Limine* Relief Without a Hearing, are flexible in their application, the requirements of Rule 26(a)(1)(A)(iii) have been routinely enforced by the courts.

In short, FED. R. CIV. P. 26(a)(1)(A)(iii) provides that Sydnor "*must* . . . provide . . . a computation of each category of damages claimed by" her, and further requires her to "make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based." Sydnor contends that the rule really means that she must compute her damages and disclose the supporting documentation *unless* the Defendant can make an educated guess at those damages. Indeed, Sydnor seeks to place the burden for making the computation, and discovering the information relevant to this computation, on the *Defendant*, thus turning the requirements of FED. R. CIV. P. 26(a)(1)(A)(iii) on their head.[1] This interpretation should not be accepted by this Court.

In short, there is absolutely no valid reason that Sydnor failed or refused to make the computation required by FED. R. CIV. P. 26(a)(1)(A)(iii), and this failure should not be excused. Her failure to compute and disclose is prejudicial to the County, and her contention that her failure to disclose is harmless does not bear up under examination.

Sydnor claims in her Opposition that the computation of her lost wages is straightforward, because she is seeking reinstatement and therefore the lost wages are no more and no less than all those wages that would have accrued between the date of her dismissal and the date of her reinstatement. Indeed, she claims that "the contention that there was a period during which Sydnor was unable to work is Defendant's, not Plaintiff's." Opposition at 4. This

---

[1] In addition, this disregard of the requirements of Rule 26(a)(1)(A)(iii) by counsel for the Plaintiff is not unique to this case. In fact, the failure to compute damages and disclose the supporting documents appears to be counsel's standard practice—indeed a comparison of the Rule 26(a)(1)(A)(iii) disclosures in this case with those in two other caseds contemporaneously filed by the same counsel shows that the disclosures are *identical*. *See*, Exhibit B, disclosures in this case and in *Bland v. Fairfax County Virginia*, Case No. 1:10cv1030 (JCC/JFA) and *Bailey v. Fairfax County, Virginia*, Case No. 1:10cv1031. This makes it clear that Sydnor did not even make an effort to compute her damages, and that she never intended to do so. This Court should ensure future compliance with the requirements of Rule 26(a)(1)(A)(iii) by enforcing those requirements in this case.

4

representation, however, directly conflicts with statements that Sydnor has made in this case.  In her deposition, Sydnor testified:

> Q. [By Ms. Killalea] Okay. The next page, you want to be restored to your position as a public health nurse, with a reasonable accommodation? That's what you're asking for under B. Do you see that?
>
> A. (Affirmative response.)
>
> Q. Okay. What is the reasonable accommodation that you're requesting in order to be restored to your position as a public health nurse?
>
> A. I don't know how to answer that.
>
> Q. Is that because you don't know what accommodation would enable you to fully function as a public health nurse at the clinic?
>
> A. I don't know how to answer that.
>
> Q. Do you want to come back to the Health Department as a public health nurse? . . . Do you think you're physically able to do the job now?
>
> A. *No*.
>
> Q. Okay. And is it fair to say the reason you can't answer the "reasonable accommodation" part is because, giv[en] your current physical status, you don't know what accommodation would enable you to do it? Is that right?
>
> A. *Right*.
>
> . . . .
>
> Q. [By Mr. Swick] Well, an accommodation would be that they're going to modify the working conditions in a way that suits you. And when she asked you what accommodations you want, what job do you think you can do? That's what she's asking you.
>
> A. *At this point, I don't know*.

5

Exhibit C, Excerpts from Sydnor Deposition, January 7, 2011, at 277, line 2, through 278, line 17 (emphasis added). This testimony makes it clear that Sydnor cannot, in fact, be seeking reinstatement, because she has testified under oath that, as of at least January 7, 2011, she can no longer do the job of a public health nurse and that she can think of no reasonable accommodation that would enable her to do the job.

Moreover, this only begins to demonstrate that it was not harmless for plaintiff to fail to provide a computation of her damages. In her deposition Sydnor also states that there are times when she is in so much pain that "[i]t prevents me from going out of the house"—and, by implication, from going to work. Exhibit C at 237, line 3. At the present this occurs once or twice a week. Exhibit C at 238, line 10-11. Her condition as of the date of her deposition is not the same as it was at the time she was dismissed. Exhibit C at 241, lines 8-10. In addition, Sydnor testified that she had at least two surgeries after her dismissal and that each of those surgeries involved recovery times of at least 6-8 weeks, during which, again, she would presumably have been unable to work. Exhibit C at 251, lines 8-11. Indeed, for at least one of those surgeries Sydnor was "on bed rest for a month." Exhibit C at 251, line 20. All of these factors, which directly bear on the calculation of her damages, are known to Sydnor and Sydnor alone. Sydnor's deposition testimony directly contradicts the position she now takes that her damages are readily determinable as the totality of the wages she would have earned between the date of her dismissal and the date of her reinstatement, because she has admitted that, as of January 7, 2011, reinstatement was not possible.

However, this is not the only time that Sydnor has made a claim that she is unable to work. On November 30, 2010, Sydnor signed an application for service-connected disability retirement which she filed with the Fairfax County Retirement Administration Agency on

December 3, 2010, and in which she affirmatively represented that "a disability incurred in the performance of my duties . . . *prevents me from performing the duties of my position*." Exhibit D, Application for Disability Retirement (emphasis added). And Sydnor's statements concerning her inability to perform her job do not end there: she has also applied for, and is receiving, Long-Term Disability Benefits. Exhibit E, Letter from CIGNA Group Insurance to Carolyn Sydnor informing her that her application for Long-Term Disability Benefits had been approved.

Because Sydnor has claimed that she was disabled from performing her job at a variety of times, her current position, that she wants to be reinstated with an accommodation—which she testified under oath only two months ago was not possible—should not operate to relieve her of the requirements of FED. R. CIV. P. 26(a)(1)(A)(iii) that she compute her damages and disclose all supporting documentation.

The case cited by Sydnor to support her claim that her failure to compute and disclose as required by FED. R. CIV. P. 26(a)(1)(A)(iii) is an unreported district court case from the Ninth Circuit which relies on the Ninth Circuit's approach to such disclosures. *See, Arberry v. Tejas Underground, LLC*, 2010 WL 5070777 (D. Nev. Dec. 6, 2010). Moreover, that case is distinguishable because, in this case, Sydnor is possessed of relevant information concerning the accurate computation of her damages that is not known to the County. Rather than follow an unpublished Ninth Circuit district court opinion, this Court is requested to follow its own approach to this issue as set forth in *Winston v. Land Transportation, LLC*, 2007 WL 2471063 (E.D. Va., Aug. 27, 2007) ("The rule is quite clear that the plaintiff must outline a computation of any category of damages that are to be claimed. Further, all documents respecting that category of damage must be produced for inspection and copying.")

## **CONCLUSION**

In this case, there is information that is relevant to a computation of Sydnor's damages that is not known by the County. Sydnor should not be permitted to avoid the requirements of FED. R. CIV. P. 26(a)(1)(A)(iii) and shift those requirements to the County. For the reasons stated in the Memorandum of Points and Authorities in Support of Motion to Limit Damages, in the County's Opposition to Plaintiff's Motion to Deny Defendant's Requested *In Limine* Relief Without a Hearing, and herein, the County respectfully prays that this Court preclude Sydnor from introducing evidence on her lost wages in this case for her failure to comply with the requirements of FED. R. CIV. P. 26(a)(1)(A)(iii) that she provide a computation of such damages and disclose all documents that support said computation.


Date:   March 22, 2011                    Respectfully submitted,

                                          **DAVID P. BOBZIEN**
                                          **COUNTY ATTORNEY**



                                          By:_____/s/_____
                                            **James E. Wilcox, Jr., Assistant County**
                                                **Attorney**
                                            Virginia State Bar No. 17743
                                            Counsel for the Defendants
                                            Office of the County Attorney
                                            12000 Government Center Parkway, Suite 549
                                            Fairfax, Virginia  22035-0064
                                            Telephone: (703) 324-2421
                                            Fax: (703) 324-2675
                                            James.Wilcox@fairfaxcounty.gov

## **CERTIFICATE OF SERVICE**

  I hereby certify that a true and correct copy of the foregoing was filed electronically with the Clerk of the United States District Court for the Eastern District of Virginia, Alexandria Division, using the CM/ECF system, on March 22, 2011.

                     /s/_____
                 James E. Wilcox, Jr., Assistant County Attorney
                 Virginia State Bar No. 17743
                 Counsel for the Defendants
                 Office of the County Attorney
                 12000 Government Center Parkway, Suite 549
                 Suite 549
                 Fairfax, Virginia 22035-0064
                 Telephone: (703) 324-2421
                 Fax: (703) 324-2675
                 James.Wilcox@fairfaxcounty.gov

\\s17prolaw01\Documents\109648\JEW\Correspondence\345266.doc