IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| CAROLYN SYDNOR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:10cv934 |
| ) | |
| FAIRFAX COUNTY, VIRGINIA, ) | |
| ) | |
| Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motions in Limine to Limit Damages [Dkts. 29, 30 (the "Damages Motion")] and to Limit Evidence [Dkts. 32, 33 (the "EEOC Motion")]. For reasons explained below, this Court will grant the EEOC Motion, which will obviate the need to rule on the Motion to Limit Damages, and which will compel the Court to dismiss this case without prejudice for failure to exhaust administrative remedies.

**I.  Analysis**

This case arises out of a former Fairfax County, Virginia, employee's allegations of violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"). Specifically, Plaintiff claims that she could have fulfilled the essential functions of her job through use of a wheelchair and

that Defendant, her employer, denied her the reasonable accommodation she sought--the use of that wheelchair. Defendant argues the full-duty-while-in-a-wheelchair accommodation was not included in Plaintiff's previous EEOC charge and that it was raised for the first time in Plaintiff's Opposition to Defendant's Motion for Summary Judgment. Plaintiff's first response to this is to claim that Defendant failed to fulfill its "meet and confer" obligations under this Court's Scheduling Order and Local Rule of Civil Procedure 7(E). [Dkt. 36 ("Opp").] Plaintiff also filed briefs in opposition to the motions in limine on March 18, 2011. [Dkts. 38 (the "Damages Opp."), 40 (the "EEOC Opp.").] Defendant filed briefs in reply on March 22, 2011. [Dkts. 48 (the "Damages Reply"), 49 (the "EEOC Reply").] Before turning to the merits of Defendant's arguments, this Court will consider Plaintiff's claims regarding the meet and confer obligation.

    A. <u>The Meet and Confer Issue</u>

    Local Civil Rule 7(E) states that, "[b]efore endeavoring to secure an appointment for a hearing on any motion, it shall be incumbent upon the counsel desiring such hearing to meet and confer in person or by telephone with his or her opposing counsel in a good-faith effort to narrow the area of disagreement." This Court's November 3, 2010 Scheduling Order [Dkt. 8] further states that "[a]ll motions must contain a

statement that a good-faith effort to narrow areas of disagreement has been made in accordance with Local Civil Rule 7(E)." Plaintiff claims that certain emails sent by Defendant fail to meet these requirements, and that as a result, this Court should decline to hear Defendant's motions.

The email exchanges are as follows. For the Damages Motion, Defense Counsel wrote on March 10, 2011,

> I will be filing a motion to limit your client's damages, by excluding evidence of lost wages and job benefits, in the above-referenced case later this afternoon, based upon the violation of the computation and disclosure requirements of Rule 26. If you will agree that the failure to compute and disclose warrants the exclusion of this evidence, please contact me within the next hour and I will not file the motion.

(Opp. Ex. 1.) Plaintiff's Counsel responded: "We do not agree. Why don't you tell us precisely what requirement of Rule 26 you contend we violated?" *Id.* To this, Defense Counsel's response was "Read the rule." *Id.*

As for the EEOC motion, Defense Counsel began with a very similar email, sent March 14, 2011. (Opp. Ex. 2.) It was met with a very similar response from Plaintiff's Counsel, and there was no further discussion. *Id.*

While both Rule 7(E) and this Court's Scheduling Order require that parties meet and confer "in person or by telephone," it is well-settled that failure to meet and confer does not automatically result in denial of a motion. *See, e.g.*,

*Wilhelm v. Cain*, No. 3:10cv109, 2011 WL 128568, at *3 (N.D.W. Va. Jan. 14, 2011); *Frontier-Kemper Constructors, Inc. v. Elk Run Coal Co.*, 246 F.R.D. 522, 526 (S.D.W. Va. 2007). Rather, sanctions for failure to meet-and-confer lie within a district court's discretion and its inherent power to control its docket. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Scott v. Belmares*, 328 F. App'x 538, 539 (9th Cir. 2009).

Here, Defendant's email response, "Read the rule," was unprofessional and unwarranted. And an email, in general, is not a sufficient means for meeting Rule 7(E), which explicitly requires either a meeting or a telephone call in a *good-faith* effort to narrow any disagreement. Thus, this Court hereby warns Defendant that the obligation to meet-and-confer in good-faith is a serious one, and that future violations may result in sanctions.

B. The EEOC Motion

Turning to the merits of the EEOC Motion, Defendant claims that, when Plaintiff filed her administrative charge with the EEOC in 2009, she failed to raise the accommodation she claimed to seek in her opposition to summary judgment: the right to use a wheelchair. The ADA requires that a plaintiff file a charge of discrimination with the EEOC before filing a complaint in federal court. *See* 42 U.S.C. § 12117(a); 29 U.S.C. § 626(f); 42 U.S.C. § 2000ff-6. The charge must be "sufficiently precise

4

to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). This requirement "serve[s] the primary purposes of notice and conciliation." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005). And it is a "jurisdictional prerequisite." *Mickel v. S.C. State Emp't Serv.*, 377 F.2d 239, 242 (4th Cir. 1967). "[O]nly those discrimination claims specifically stated in the charge or developed during reasonable investigation of the original administrative complaint may be maintained in a subsequent lawsuit." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).

This Court noted in its March 3, 2011 Memorandum Opinion, that "Plaintiff seems to have communicated very little with regard to the proposed accommodation she now raises (the use of a wheelchair)." (March 3, 2011 Mem. Op. at 25-26 (citing Plaintiff's letter to Defendant regarding her proposed termination).) That letter listed, as "the tasks I can perform," "work[ing] as the [Nurse of the Day], do[ing] STD prep and [patient] call backs, work[ing] at the H1N1 call center, or do[ing] x-ray [tuberculosis screening], to name a few." *Id.* Plaintiff then complained that her supervisors "have chosen instead to schedule other people *to do the work I can perform*, yet insisting that I need to work *only in the clinic, which is hard for me given my current condition*." *Id.* (emphasis added).

5

This language seems to differentiate the work Plaintiff *could* perform from working normal duty *in the clinic*. This raised doubts, in this Court's mind, "as to *when* [Plaintiff] decided that using the wheelchair was the accommodation she wanted." *Id.*

The Court's doubts are now borne out by Plaintiff's EEOC questionnaire. In response to the question, "What reason(s) were given to you for the acts you consider discriminatory," Plaintiff wrote the following:

> Failure to accommodate: I requested light duty assignment. I asked to do light duty work in the clinic.

(EEOC Opp. Ex. A.) Where the EEOC charge later asked, "Did you ask your employer for any changes or assistance to do your job because of your disability," Plaintiff checked "Yes." *Id.* Filling in the line, "Describe the changes or assistance that you asked for," she wrote:

> Asked to be assigned as Nurse of the Day and to be in the clinic doing lighter duty work. Nurse of the Day performs lighter duty work.

*Id.*

These statements leave no room for any interpretation consistent with Plaintiff's current theory of accommodation. They put the reader on notice that the accommodations she sought were the ones she stated: light duty work in the clinic or assignment as Nurse of the Day.

Plaintiff notes other statements in the EEOC questionnaire about her employer "failing to engage in a reasonable discussion regarding accommodating my disability," her supervisor telling her "she didn't want me running around in my scooter in the clinic – though I could have remained in one place performing this job," and her supervisor stating that "she did not want me around the patients in the clinic because of my wheelchair." (EEOC Opp. at 2.) From these statements, Plaintiff claims that "a reasonable investigation would have led to the allegation . . . that Sydnor was able to work in the clinic in her wheelchair with a few minor adjustments." *Id.*

The Court disagrees with that conclusion. It is true that "*discrimination claims* . . . developed during reasonable investigation of the original administrative complaint may be maintained in a subsequent lawsuit." *See Jones*, 551 F.3d at 300 (emphasis added). Yet Plaintiff has not provided, and this Court has not found, any case law support for the proposition that the reasonable-investigation standard can apply to the uncovering of *the* accommodation Plaintiff really wanted all along (but kept to herself).

Indeed the sole case Plaintiff cites in her brief, *Chisholm v. USPS*, 665 F.2d 482 (4th Cir. 1981), is minimally relevant. That case involved a class-action against the Postal Service for a racially discriminatory system of employee

promotion.  The defendant argued that although the named-plaintiff's administrative complaint listed discrimination in promotion and detailing, it did not allege discrimination in discipline and testing, such that other class members should not be permitted to advance discrimination claims under those theories.  *Id.* at 491.  The Court found that the discrimination administratively alleged put the defendant on notice that its entire promotional system was being challenged, meaning that other kinds of discrimination in promotion could be raised.  *Id.*

Although this case differs in many respects from *Chisholm*, the most important difference is on the issue of *notice*.  It is fairly clear that an allegation of discrimination in promotion is a challenge to a company's entire promotional system.  But it is far from clear that an allegation of failure to make specific disability accommodations put Defendant on notice that it would have to defend a failure to make a completely *inconsistent* accommodation.  This Court cannot accept the notion that a reasonable investigation would have found that, when Plaintiff stated that the accommodation she wanted was light duty or assignment as nurse of the day, what she *really* meant was that she wanted was the functional opposite--to perform her normal clinic duty in a wheelchair.

Thus, Plaintiff failed to file her proposed accommodation with the EEOC, meaning that this Court must

8

dismiss this case for failure to exhaust administrative remedies.  This Court will therefore not reach the Damages Motion.

## II. Conclusion

For these reasons, the Court will grant Defendant's EEOC Motion and will dismiss this matter for failure to exhaust administrative remedies.


March 23, 2011                          _____/s/_____
Alexandria, Virginia                           James C. Cacheris
                                    UNITED STATES DISTRICT COURT JUDGE